UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
Angel Rivera                                          :
                                                      :     **ORDER DENYING**
                                 Petitioner,          :     **PETITION FOR WRIT OF**
                                                      :     **HABEAS CORPUS**
        -against-                                     :
                                                      :     05 Civ. 9411 (AKH)
ROBERT E. ERCOLE, Superintendent, Green               :
Haven Correctional Facility                           :
                                                      :
                                 Respondent.          :
------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Petitioner Angel Rivera ("Rivera"), currently an inmate at Green Haven

Correctional Facility, brings this petition for habeas corpus, alleging that he is being held in state

custody in violation of his constitutional rights. See 28 U.S.C. § 2254.  Petitioner is currently

serving concurrent terms of twenty-three years to life for Attempted Murder in the Second

Degree, and two to four years for Intimidating a Witness in the Second Degree. Petitioner was

convicted by the New York Supreme Court, Bronx County following trial, where the prosecution

presented evidence that Petitioner had nearly killed Juan Rodriquez ("Juan") in a stabbing attack

on February 29, 2000, and later, threatened Juan in an attempt to prevent him from testifying.

Petitioner asserts that his due process rights under the Fourteenth Amendment, and his right to

confront a testifying witness under the Sixth Amendment, were violated by the trial court's

admission, under the "excited utterance" exception to the hearsay rule, of statements made by an

unavailable, non-testifying witness.  For the reasons stated below, I dismiss the petition and deny

habeas corpus.

## Background

        Petitioner and Juan became acquainted in 1999, when Juan's sister, Margarita Rodriquez

("Margarita"), and Petitioner began dating.  Tr. 357, 366.  Although Margarita had ended the

relationship near the end of 1999, Juan remained friendly with Petitioner, whom he continued to see "practically every day" around the neighborhood.  Tr. 277.  On one such occasion, in late February of 2000, Petitioner approached Juan and told him that "Edwin," who had previously loaned Juan $70, "wanted his money." Tr. 286-87.  Juan replied by instructing Petitioner to, "tell Edwin I'll pay him his money back." Tr. 286.  No further discussion occurred and Juan did not believe the matter to be serious.  Tr. 286, 290.

A few days later, on February 29, 200, Juan was walking on Hoe Avenue in the Bronx, accompanied by his former girlfriend, Doris Rodriguez ("Doris"). Tr. 289-90, 297.  At approximately 3:30 p.m. Petitioner approached Juan and said, "Where is my money?[1] This is for you," and proceeded to stab Juan in the chest repeatedly. Tr. 289-90.  During the attack, Doris, who knew Petitioner, having previously been introduced to him by Margarita, screamed "Angel, stop that." Tr. 292, 358.  Despite Juan's efforts to protect his chest with his hands, one of the stab wounds perforated his heart, and when paramedics arrived on the scene at approximately 3:35 p.m., they found him "unresponsive" and with "no blood pressure," but continued to minister to him. Tr. 452-53.

Approximately ten minutes after the stabbing, Doris found a payphone and paged Margarita. Tr. 359-60.  In addition to entering the phone number of the payphone she was calling from, Doris indicated the urgency of the page by adding the digits "911." Tr. 360.  Almost immediately, Margarita responded to the page and called Doris at the payphone. Tr. 359. Doris was "crying and screaming" and told Margarita, "[y]our brother just got stabbed…. He got stabbed by Angel…. Your ex-boyfriend." Tr.  360.

---

[1] The record does not provide an explanation of why Petitioner, who had previously instructed Juan to pay his debt to Edwin, referred to Juan's delinquent debt as "my money," just before the stabbing.

Detective Patrick Mulcahy, who arrived on the scene while the paramedics were working on Juan, questioned Doris about the attack. [2]  Tr. 335.  Doris, whom Detective Mulcahy described as "emotionally distraught," "crying," and "very upset," told the detective that she did not know the identity of Juan's assailant.  Tr. 348-49.  While Doris spoke with Detective Mulcahy, paramedics revived Juan by administering a pericardial thump.[3]  Tr. 454.  Once Juan's pulse was restored, Doris accompanied him in the ambulance as he was transported to a nearby hospital.  Tr. 359-69.  Margarita arrived at the scene minutes after the ambulance departed, and told police about her conversation with Doris.  Tr. 360.

Later that afternoon, Doris was taken to the 41st precinct, where Detective Peter Schwartz interviewed her. Tr. 405-06.  In that interview, Doris identified Petitioner as Juan's attacker, and assisted the detective in determining where Petitioner could be found.  Tr. 406. Based the information provided by Doris, Detective Schwartz located Petitioner in lower Manhattan, and, at approximately 10:00 p.m., arrested him for the attempted murder of Juan. Tr. 408.

At the hospital, surgeons operated on Juan and repaired a hole in the left ventricle of his heart. Tr. 463.  The surgical team also discovered and repaired a wound to Juan's diaphragm. Tr. 465.  Upon awakening from surgery, Juan spoke with police regarding the attack, and, following his release from the hospital, testified before a Grand Jury in Bronx County that Petitioner had stabbed him in the heart on February 29, 2000. Tr. 295-96. On March 23, 2000, the Grand Jury indicted Petitioner for, *inter alia*, Attempted Murder in the Second Degree.  N.Y. Penal Law § 110.00/125.25[1].  Petitioner was remanded to Rikers Island Correctional Facility.  Just over one week later, on April 1, 2000, Petitioner called Juan from Rikers Island and told him that he

---

[2] It is unclear if Doris spoke first spoke to Margarita or Detective Mulcahy.
[3] A pericardial thump is a procedure performed on a non-breathing patient without a pulse in which the paramedics attempt to restore a heartbeat by administering an electrical shock to the chest.

would "put the word on the street" if Juan did not "change his testimony." Tr. 300.  Juan

reported the phone call to police and Petitioner was subsequently indicted for Intimidating a

Victim or Witness in the Third Degree on April 14, 2000. N.Y. Penal Law § 215.15[1].  Both

indictments were consolidated on August 10, 2000.


## Prior Proceedings and Procedural History

Petitioner's trial commenced on January 22, 2002, and was presided over by Justice

Robert L. Cohen of the New York Supreme Court, Bronx County.  On Thursday, January 24,

2002, outside the presence of the jury, the prosecutor informed Judge Cohen that the District

Attorney's office had been unable to locate Doris who apparently, had moved to Florida without

providing an address or phone number. Tr. 228-29.  The prosecutor requested that Margarita be

allowed to testify, under the "excited utterance" exception to the hearsay rule, as to the phone

conversation in which Doris had identified Petitioner as Juan's assailant. Tr. 229.  The

prosecutor explained that his conversations with Margarita, as well as his review of police

records, indicated that Doris had paged Margarita, and then spoken with her on the phone almost

immediately after the stabbing. Tr. 229.  The prosecutor also attested to having evidence that

Doris described the attack in a hysterical tone of voice. Tr. 229.  When asked if he objected to

the admission of Doris's statements, Petitioner's counsel responded that he would like more time

to review the sequence of events to determine if the statements qualified as "truly an excited

utterance." Tr. 230.  He suggested that the court conduct a hearing to clarify the facts

surrounding the statements.  The judge declined this suggestion, and instead, conditionally ruled

that if Doris witnessed the startling events of Juan's stabbing, and if she spoke with Margarita

"within a reasonable period" after the stabbing, her statements were admissible as excited

utterances. Tr. 234-35.  The judge noted that the evidence provided by the prosecutor, as well as

the Grand Jury minutes, suggested that these two conditions were satisfied.  As a result, the judge stated that he did not believe a hearing was necessary, but reserved his decision until the following Monday to give defense counsel the opportunity to raise any additional arguments. Tr. 235.

On the following Monday, the judge proceeded without ruling further on the admissibility of Doris's alleged statements.  Nevertheless, the prosecutor, in his opening statement, informed the jury that they would hear from Margarita that, minutes after the stabbing, she spoke to a hysterical Doris, who told Margarita that Petitioner had stabbed Juan. Tr. 264.  Defense counsel made no objection.

For his first witness, the prosecutor called Juan, who testified unequivocally that Petitioner had stabbed him in the chest on February 29, 2000.  Tr. 290-91.  Juan explained his relationship with Petitioner, and described the $70 unpaid debt to "Edwin" that apparently motivated the attack. Tr. 256-87. Juan also discussed his history of drug use and admitted to using cocaine on the day of the attack. Tr. 329.

Detective Patrick Mulcahy testified next, explaining that he arrived at the scene of the stabbing within five or ten minutes of receiving a radio call reporting that an assault had taken place on the corner of 167th Street and Hoe Avenue. Tr. 334.  Petitioner's counsel requested that Detective Mulchay's police report, which he completed at the scene of the stabbing, be admitted into evidence. Tr. 341.  Counsel argued the he should be permitted to "combat" Doris's testimony with the report, which indicates that, shortly after the stabbing, Doris told Detective Mulcahy that she didn't know who had stabbed Juan. Tr. 345.  Justice Cohen admitted the report into evidence, over the objection of the prosecutor, opining that "it would be extremely unfair and, possibly, if this defendant is convicted, [a] reversible error [] to admit the excited utterance

and at the same time deprive the defendant the opportunity to confront a document which states that the interviewee was in fact Doris Rodriguez." Tr. 346.

Following Detective Mulcahy's testimony, the prosecutor called Margarita, who testified to her past relationship with Petitioner, and to her conversation with Doris immediately after Juan was attacked.  Tr. 352-64.  Defense counsel did not object when Margarita was called, nor at any time during her testimony.

The defense did not call any witnesses, nor did Petitioner elect to testify on his own behalf.  In his closing arguments, Petitioner's counsel focused on the credibility of the prosecution's witnesses.

In the prosecutor's closing arguments, he stated that he "would be comfortable resting on [Juan's] testimony alone to convince [the jury] beyond a reasonable doubt that this defendant nearly killed [Juan]." Tr. 527.  He also pointed out that there was nothing in the record, nor had defense counsel suggested, any plausible reason why Juan would falsely accuse Petitioner.[4] Tr. 514.  The prosecutor further asked the jury to consider Petitioner's phone call to Juan from Riker's Island, in determining whether or not there was reasonable doubt that Petitioner was Juan's attacker.  Tr. 527-29.

The jury found Petitioner guilty of Attempted Second-Degree Murder and Intimidating a Victim or Witness in the Third Degree. Tr. 579.  On May 6, 2002 the court sentenced Petitioner, as a persistent violent felony offender, to concurrent prison terms of twenty-three years to life for Attempted Murder, and two to four years for Intimidating a Victim or Witness.

In December 2002, Petitioner appealed his conviction to the Appellate division, arguing that the admission of Doris's statements under the "excited utterance" exception constituted an

---

[4] In arguing that the defense failed to demonstrate any reason for Juan to lie, the prosecution may have improperly shifted its burden to the defense.  Nevertheless, this issue, even if raised by Petitioner, would not constitute a cognizable habeas claim, given the overwhelming evidence of Petitioner's guilt. See Burger v. Kemp  483 U.S. 776, 782 (1987).

erroneous application of New York evidentiary law.  Petitioner further argued that this error

deprived him of his constitutional rights under both the Confrontation Clause and the Fourteenth

Amendment.  On June 8, 2004, the Appellate Division, First Department, affirmed the

conviction.  People v. Rivera,  778 N.Y.S.2d 28, 29 (1st Dept. 2004). The court held:

> The [trial] court properly admitted the victim's girlfriend's telephoned statement to
> the victim's sister, identifying defendant as the assailant, under the excited
> utterance exception to the hearsay rule. This declaration, made within minutes of
> the stabbing by a crying, screaming declarant, was clearly made under the
> continuing stress and excitement caused by the startling event, and was not made
> under the impetus of studied reflection…To the extent that defendant is raising a
> constitutional claim, such claim is unpreserved and we decline to review it in the
> interest of justice. Were we to review this claim, we would find that the
> declaration was not a testimonial statement and thus was not covered by the
> Confrontation Clause.

Id. (internal citations omitted).  Petitioner sought leave to appeal to the New York Court of

Appeals, but leave was denied by Certificate of July 21, 2004.  People v. Rivera, 3 N.Y.3d 662

(N.Y. 2004).  Petitioner's conviction became final ninety days later, on October 21, 2004.

Williams v. Artuz, 237 F.3d 147, 151 (2d Cir.2001) (conviction becomes final "ninety days after

the final determination by the state court").

The Pro Se Office in this District received Rivera's habeas petition on October 19 2005,

and it is therefore timely. 28 U.S.C. § 2254(d)(1)(A) (one year statute of limitations for filing of

writ, measured from "date on which judgment became final"); Noble v. Kelly, 246 F.3d 93, 97-

98 (2d Cir. 2001) (pro se habeas petitioner's filing date equated to date of delivery to prison

officials for forwarding to the clerk of the court).  In his petition, Rivera cited "inadmissible

hearsay" as grounds for habeas review, restating the claims he made to the Appellate Division,

namely, that the admission of the hearsay testimony violated both his constitutional right to due

process under the Fourteenth Amendment, and his right to confront a testifying witness under the

Confrontation Clause.

On April 24, 2006, Petitioner filed a motion with the Court requesting that I stay all proceedings to allow him to pursue in state court an unexhausted claim of ineffective assistance of counsel. See Zarvella v. Artuz, 254 F.3d 374 (2d Cir. 2001).  I denied that motion without prejudice to refilling an amended petition within thirty days of receiving respondent's Answer. As Petitioner was served with respondent's Affidavit In Opposition on March 23, 2007 and has not filed a response, I now review Rivera's fully submitted petition for habeas corpus.  See Id. at 381 (stay of proceedings on exhausted claims should normally be conditioned on initiation of unexhausted claims within 30 days).  Additionally, because I find that Petitioner's claim of ineffective assistance of counsel is without merit, and can readily be determined from the record before me, a stay is unnecessary and Petitioner's motion for a stay of proceedings is DENIED. Rhines v. Weber, 544 U.S. 269, 278 (2005) (A district court should not grant a habeas Petitioner a stay and abeyance in a proceeding involving a mixed petition of exhausted and unexhausted claims when the Petitioner's unexhausted claims are plainly meritless.).

## Discussion

### A.  *Petitioner's Due Process Claim*

Petitioner asserts that admitting Margarita's testimony regarding Doris's excited utterances in their phone conversation immediately following the stabbing was an improper application of New York State evidentiary law and, therefore, a violation of Petitioner's due process rights under the Fourteenth Amendment.  Specifically, Petitioner contends that Doris's statements did not meet the criteria for the "excited utterance" exception the hearsay rule.

In conducting habeas corpus review, a federal court does not rule on whether the state trial court correctly applied state law.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  Thus, claims of evidentiary error are cognizable only if the challenged holding(s) rendered the trial fundamentally unfair.  Id. at 75.  Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988) (writ

will issue only where an evidentiary holding deprived Petitioner of a fundamentally fair trial). Specifically, "[t]he erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Johnson v. Ross, 955 F.2d 178, 181 (2d Cir.1992) (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir.1985)).

Given the overwhelming evidence in the case against Petitioner, Doris's testimony is not so material to Petitioner's guilt as to have had a substantial effect on the verdict.  In this case, the jury heard unequivocal testimony from the victim that Petitioner stabbed him in the heart on February 29, 2000.  The jury was also presented with evidence that Petitioner had attempted to intimidate Juan, thereby preventing him from testifying.  Therefore, irrespective of whether the trial court correctly applied New York State evidentiary law, this claim does not state a ground for federal habeas relief.

### B.  Petitioner's Confrontation Clause Claim

Petitioner also asserts that his Sixth Amendment right to confront a testifying witness was violated when the trial court allowed the admission of Doris's statements.  The Appellate Division held that Petitioner's constitutional claim was "unpreserved" and declined to review it, but that, were they to review the merits of the claim, they would find that the declaration was "not a testimonial statement and thus was not covered by the Confrontation Clause." Rivera, 778 N.Y.S.2d at 29 (citing Crawford v. Washington,  541 U.S. 36, 51-53 (2004)).  Because I concur with the Appellate Division's holding that Doris's statements are nontestimonial and, therefore, not covered by the Confrontation Clause, I find it unnecessary to rule on whether Petitioner's Confrontation Clause claim was preserved.

In <u>Crawford v. Washington</u>, the Supreme Court held that the Confrontation Clause prevents the admission of evidence based on hearsay exceptions that are "invoked to admit testimonial statements against the accused in a criminal case." 541 U.S. 36, 56 (2005). But only testimonial statements are covered, as the Supreme Court clarified in <u>Davis v. Washington</u>. 126 S.Ct. 2266, 2274 (2006) (quoting <u>Crawford</u>, 541 U.S. at 51 ).  The Supreme Court explained that its ruling in <u>Crawford</u>, limiting the Confrontation Clause to testimonial statements, illustrates a "limitation so clearly reflected in the text of the constitutional provision [that it] must fairly be said to mark out not merely its 'core,' but its perimeter." 126 S.Ct. 2266, 2274 (2006).  So the Second Circuit ruled, "the Confrontation Clause simply has no application to nontestimonial statements. <u>U.S. v. Feliz</u>,  467 F.3d 227, 231 (2d Cir. 2006) (citing <u>Davis v. Washington</u>, 126 S.Ct. 2266, 2274 (2006).

Here, Doris's statements to Margarita, "Your brother just got stabbed…. He got stabbed by Angel…. Your ex-boyfriend," made during a phone call minutes after the stabbing are nontestimonial.  As Justice Cohen found, Doris's statements qualified as excited utterances because they were made almost immediately after she witnessed the startling event of Petitioner's attack on Juan.

Excited utterances, generally, are not testimonial. <u>Davis</u>, 126 S.Ct. at 165  (statements given to 911 operators which constitute excited utterances are not "testimonial hearsay").  In some situations however, where the statements are made to law enforcement personnel or other officials, excited utterances may be testimonial under <u>Crawford</u>.  In such cases, an excited utterance will be testimonial only if made in response to an interrogation, which was conducted "to establish or prove past events potentially relevant to a later criminal prosecution." <u>People v. Nieves-Andino</u>, N.Y. Slip Op. 05584, 2007 WL 1834786, at *1 (N.Y. Jun. 28, 2007) (Jones concurring).

In this case, Margarita was not acting in any official capacity when she spoke to Doris after the stabbing. Moreover, Doris's statements were not made in response to any interrogation, or for purposes of criminal prosecution. Instead, Doris, traumatized by witnessing the near-fatal stabbing of her companion, acted instinctively and called Juan's sister to inform her of what happened. Because Doris's statements are not testimonial, there is no Confrontation Clause claim with respect to these statements.

### Conclusion

For the reasons stated above, the petition for a writ of habeas corpus is dismissed. Further, I deny a certificate of appealability, for there has not been a substantial showing of the denial of a constitutional right. Lozada v. United States, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). The Clerk of the Court shall mark the case as closed.

SO ORDERED.

Dated:       New York, New York
             July 6, 2007

                                        ALVIN K. HELLERSTEIN
                                        United States District Judge

11